UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BINGHAM CENTER OWNER, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>COMCAST OF FLORIDA/MICHIGAN/NEW MEXICO/PENNSYLVANIA/WASHINGTON, LLC,<br><br>    Defendant. | Case No. 21-10918<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23] AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [22]**

For almost two decades, Comcast of Florida/Michigan/New Mexico/Pennsylvania/Washington, LLC leased over fifty thousand square feet of a property in Bingham Farms, Michigan from Bingham Center Owner, LLC. The property served as Comcast's corporate offices, complete with a small fitness center. Upon expiration of the lease on August 31, 2020, the parties' relationship took a turn.

Having some delays with its moving company, Comcast left gym equipment, including treadmills, ellipticals, and weights, in the leased building for one day past the expiration of the lease. It removed the gym equipment on September 1 by 2 p.m. Comcast also left a disassembled conference room table, which it never retrieved.

According to Bingham, Comcast's actions made it a holdover tenant. The lease agreement, says Bingham, directs Comcast to remove its personal property before the lease ends. Having failed to do this, Comcast did not return full possession of the

premises to Bingham before the lease expired. Thus, pursuant to the lease agreement, Comcast owed Bingham an increased rent for September.

Comcast disagrees that it was a holdover tenant. Comcast states that it paid to have the gym equipment removed as soon as it could, so Bingham incurred no damages from the equipment remaining there an extra day. And, says Comcast, inadvertently leaving a disassembled table in the building does not establish a holdover tenancy.

So Comcast did not pay the full outstanding balance ($166,366.18 remains to be paid), and Bingham sued it for breach of contract. In time, both Bingham and Comcast filed motions for summary judgment.

Both motions are before the Court. Because the lease agreement does not define holdover tenancy, and because the ordinary meaning of the term does not include leaving personal property on the leased premises, the Court GRANTS Comcast's motion and DENIES Bingham's motion.

**I.**

The relationship between Bingham and Comcast was a common one between a landlord and a tenant. In 2006, Bingham and Comcast entered into a lease agreement to rent out a building in Bingham Farms, Michigan. (ECF No. 22-2, PageID.277.)

A few provisions in the lease agreement are important to the dispute here. Section 6 states in relevant part, "Tenant's obligation upon expiration of the Lease shall include, but not be limited to, the removal of all its equipment and personal

property, telephone systems and cabling, computer data communication systems and security systems." (ECF No. 22-2, PageID.282.) Section 7 then states, "All alterations, additions or improvements made by either party hereto the Leased Premises, except Tenant's movable office furniture, movable equipment, movable trade fixtures . . . shall become the property of Landlord upon the expiration of the term . . . and all personal property remaining in the Leased Premises after the last day of the term of this Lease shall conclusively be deemed abandoned by Tenant, or may be removed and stored by Landlord, at Tenant's cost." (*Id.* at PageID.283.)

Section 24 addresses holdover tenancy, stating, "In the event of Tenant holding over after the expiration or termination of this Lease . . . thereafter the tenancy shall be from month-to-month in the absence of a written agreement to the contrary, at the Base Rent equal to one and one-half (1-1/2) times the Base Rental set forth in Paragraph 3." (ECF No. 22-2, PageID.290.)

The agreement was set to expire (via subsequent amendments to the lease) on August 31, 2020. (*Id.* at PageID.349, 354, 374.)

So one month before the lease was set to end, Comcast representative Michael Sutfin emailed the Bingham property manager, David Baratta, to arrange for Comcast to move out. (ECF No. 22-3, PageID.379.) Baratta testified that to his knowledge, Comcast "did not have personnel in [the building] prior to this. It was for all intents and purposes, closed. So it wasn't a surprise when [Comcast] came down and said they were moving out or getting rid of the furniture." (ECF No. 22-4, PageID.385.) Sutfin and Baratta discussed the logistics of Comcast's move, including

3

times Comcast could move out and access the service elevator. (ECF No. 22-4, PageID.385.)

According to Baratta, the next time he talked to Sutfin was on September 1, the day after the lease expired. Baratta was doing a walk through on that day to check the condition of the space. (ECF No. 22-4, PageID.386.) It was then that he noticed that gym equipment and a conference table remained in the building. (*Id.* at PageID.387.) The gym equipment was being moved out as Baratta walked through. (*Id.*) So that afternoon, at around 2 p.m., Baratta emailed Sutfin, saying, "Mike the Weight room equipment removal has been completed today. You have a disassembled conference room table in suite N120." (ECF No. 22-8.) Sutfin replied, "I know exactly which one it is and what happened. I will make plan to have removed as soon as I can." (*Id.*) Baratta says that no one came to remove the table, so it was discarded. (ECF No. 22-4, PageID.388.)

Also on September 1, Baratta wrote an email to Andy Gutman, who appears to be his supervisor, stating "I just walked upstairs to Comcast the weight room is cleared out but they still have 1 table remaining. Rest of the space is very clean." (ECF No. 23-5, PageID.507.)

Sutfin has a slightly different story. He agrees that there was gym equipment and a conference table remaining in the building on September 1. (ECF No. 22-5, PageID.411–412.) Sutfin says, however, that he had asked Baratta a few days before the lease ended if it would be okay to remove the gym equipment on September 1 because of "manpower issues with our mover." (*Id.* at PageID.412.) Baratta told

4

Sutfin it "should not be an issue[.]" (*Id.*) Baratta denies this conversation happened. (ECF No. 22-4, PageID.386.)

On September 16, Baratta emailed Comcast saying that it was a holdover tenant because "your furniture specifically the weight room and some misc. furniture was not removed by the end of the lease term." (ECF No. 22-9.) Baratta also requested that Comcast pay the balance on the account, which included an increased holdover rent for September.

Comcast did not pay the full outstanding balance, so Bingham sued for breach of contract. (ECF No. 1-1.) Comcast removed the diversity case to this Court. (ECF No. 1.)

After conducting discovery, both parties moved for summary judgment. (ECF Nos. 22, 23.) Given the extensive briefing and clear record, the Court considers the motions without further argument. *See* E.D. Mich. LR 7.1(f).

## II.

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

When, as here, there are cross-motions for summary judgment, the Court considers them separately, and it is not necessarily the case that either party is entitled to summary judgment. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021). When considering Comcast's motion, the evidence is viewed in the light most favorable to Bingham and the initial (and ultimate) burden is on

Comcast to show that it is entitled to judgment as a matter of law. *See id.* The opposite is true when considering Bingham's motion. *See id.*

### III.

The central issue in this case is whether Comcast should be considered a holdover tenant under its lease agreement with Bingham for leaving gym equipment and a conference table on the premises. Both parties ask this Court to examine the lease and determine this issue on summary judgment.

The parties agree that, since the Court has diversity jurisdiction over this dispute, Michigan law governs how to interpret the lease agreement. *See Alabama Farmers Co-op, Inc. v. Jordan*, 440 F. App'x 463, 465 (6th Cir. 2011). In Michigan, lease agreements are interpreted like any other contract. *MJCC 8 Mile, LLC v. Basrah Custom Design, Inc.*, Nos. 346969, 357238, 2022 WL 1274887, at *4 (Mich. Ct. App. Apr. 28, 2022) (citing *In re Smith Trust*, 745 N.W.2d 754, 757–58 (Mich. 2008)). And when interpreting any contract, a court must "determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *Id.*

So the Court starts by looking at the language of the lease agreement. Bingham points the Court to two provisions it believes establishes that Comcast was a holdover tenant. First is section 6, which states, "Tenant's obligation upon expiration of the Lease shall include, but not be limited to, the removal of all its equipment and personal property[.]" (ECF No. 22-2, PageID.283.) The second is section 24: "In the event of Tenant holding over after the expiration or termination of this Lease . . . the

6

tenancy shall be from month-to-month . . . at the Base Rent equal to one and one-half (1-1/2) times the Base Rental set forth in paragraph 3." (ECF No 22-2, PageID.290.) According to Bingham, a violation of section 6 (leaving personal property) triggers the holdover tenancy provision in section 24.

These two provisions, however, give the Court little guidance as to what creates a holdover tenancy under the agreement. Bingham says that section 6 reflects "the parties' intent as to what constitutes a holdover." (ECF No. 22, PageID.241.) But all that paragraph says is what the tenant is obligated to do when the lease ends. Nothing in that paragraph indicates that failing to remove personal property amounts to a holdover tenancy. Section 24 similarly is of little help. Though it references holdover tenancy, it only states what should happen "in the event of Tenant holding over." (ECF No. 22-2, PageID.290.) The provision does not define what "holding over" means and whether that would include leaving belongings on the premises. Further, there is no clear link between section 6 and section 24 such that failure to comply with section 6 can be said to "trigger" the remedy in section 24. (*See* ECF No. 22, PageID.243.) So the lease agreement does not tell the Court if Comcast was a holdover tenant as it does not define holdover tenant.

Because the lease agreement does not provide a definition, the Court turns to other sources. The Court "can look to dictionaries, including legal dictionaries" when determining the plain and ordinary meaning of a term. *King v. Pa. Life Ins. Co.*, 470 F. App'x 439, 444 (6th Cir. 2012) (citing *Minges Creek, LLC v. Royal Ins. Co. of Am.*, 442 F.3d 953, 956 (6th Cir. 2006)). Helpfully, both parties rely on the same Michigan

7

case in which the court of appeals held that "'[h]olding over' has a definite legal meaning, and it is presumed that the parties to the lease intended the term to bear that meaning unless a contrary intention is shown." *See Popovski v. NJ Enterps., LLC*, No. 262309, 2006 WL 3421793, at *2 (Mich. Ct. App. 2006) (looking to dictionary definition to determine what "any holdover tenant" meant in a lease agreement). Having determined that the lease agreement shows no "contrary intention" to define holdover tenancy differently, the Court will look to that legal meaning of the term.

"A holdover tenant is defined as one 'who retains possession after the expiration of a lease, or after tenancy at will has been terminated.'" *Popovski*, 2006 WL 3421793, at *2 (quoting Black's Law Dictionary (5th ed. 1979)); *see also Holdover Tenant*, Black's Law Dictionary (11th ed. 2019) (likewise defining a holdover tenant as "someone who remains in possession of real property after a previous tenancy (esp. one under a lease) expires, thus giving rise to a tenancy at sufferance."). Possession, in turn, is defined as "[t]he fact of having or holding property in one's power; the exercise of dominion over property." *Possession*, Black's Law Dictionary (11th ed. 2019). Another definition of "possession" is "[t]he right under which one may exercise control over something to the exclusion of all others[.]" *Id.*

Michigan courts also have shed some light on what counts as a holdover tenancy. For example, the Michigan Court of Appeals has found that a holdover tenant is someone "remaining in a leased space after the expiration of the lease agreement." *Horton v. Gebolys*, No. 348461, 2020 WL 4236410, at *2 (Mich. Ct. App. July 23, 2020). And historically, Michigan courts have recognized that some element

8

of intent is necessary to create a holdover tenancy. *See Scott v. Beecher*, 52 N.W. 20, 21 (Mich. 1892) ("The law presumes an intention by the tenant to continue the yearly tenancy from the holding over.").

Using these definitions as the plain and ordinary meaning of "holding over" in the lease agreement, Comcast was not a holdover tenant merely because it left gym equipment for a few extra hours and a disassembled table on the premises.

Take the definition given by Black's Law dictionary. Comcast cannot be said to have exercised possession over a large building by leaving personal property in essentially a single room. Courts have interpreted the Black's Law definition of holdover tenancy as meaning "the failure to surrender property, not failure to make required repairs or failure to surrender *in a particular condition*." *Fairfax Portfolio, LLC v. Owens Corning Insulating Sys., LLC*, 509 F. App'x 822, 827 (10th Cir. 2013) (emphasis in original). And at the very least, Bingham has not pointed to any legal authority that suggests that leaving one's personal property in a building after the lease ends constitutes possession. *See JP Morgan Chase Bank, NA v. Jackson GR, Inc.*, No. 311650, 2014 WL 3529088, at *4 (Mich. Ct. App. July 15, 2015) ("KGR does not cite any authority for the premise of its argument that a tenant maintains a possessory interest in formerly leased premises, after the lease has expired and the tenant has vacated the premises, by leaving personal property at the unsecured premises."); *see also Mills v. County of Lapeer*, 498 F. App'x 507, 511–12 (6th Cir. 2012) (surveying cases and finding that tenancy at sufferance under Michigan law

9

means a tenant who "continued to occupy the premises after the expiration of his lease" or a tenant's "continued presence" on the premises).

Bingham also cannot show that the Court should assume that by leaving the equipment and table, Comcast intended to continue its tenancy. To the contrary, Comcast told Bingham that it wanted to discuss its move out one month before the lease expired. (ECF No. 22-3, PageID.379.) Baratta testified that he was not surprised that Comcast was moving out at the end of its lease because it had no personnel working in the building anymore. (ECF No. 22-4, PageID.385.) And on September 1, Baratta wrote an email stating that Comcast had "cleared out but they still have 1 table remaining. Rest of the space is very clean." (ECF No. 23-5, PageID.507.) Baratta's walk-through also belies any argument that Comcast exercised control over the property "to the exclusion of all others." *See Possession*, Black's Law Dictionary (11th ed. 2019). So every reasonable fact-finder would find that Comcast made "clear indications of an intention to vacate" and did not want to "continue the . . . tenancy from holding over." *See Scott*, 52 N.W. at 21.

Comcast's actions fit neither the Black's Law Dictionary nor the Michigan courts' definitions of a holdover tenancy. Absent any indication that the lease defines holdover tenancy in a different way, Comcast was not a holdover tenant when it left gym equipment and a table on the property. Thus, it does not owe the increased rent described in section 24 of the lease.

Resisting this conclusion, Bingham states that to give effect to every provision in the lease agreement (as the Court must), failure to remove all movable personal

10

property by the end of the lease under section 6 must constitute a holdover tenancy. If it does not, section 6 is essentially read out of the agreement. But that is not the case. If Comcast breached section 6 by leaving gym equipment and a table on the premises, Bingham would be entitled to any damages it incurred as a result of that breach. But those damages do not necessarily have to be the increased monthly rent for holdovers. In other words, Comcast can breach the lease agreement and Bingham can get damages for that breach separate and apart from whether Comcast is a holdover tenant. Those are two different issues, and nothing in the lease makes it so the two provision are connected in any way.

In fact, the lease agreement provides the opposite. Section 7 states, "all personal property remaining in the Leased Premises after the last day of the term of this Lease shall conclusively be deemed abandoned by Tenant, or may be removed and stored by Landlord, at Tenant's cost." (ECF No. 22-2, PageID.283.) The agreement itself suggests a remedy for leaving property on the premises that is different from the remedy in the holdover tenancy provision. That remedy is the costs associated with removing or storing the personal property remaining in the building. The record shows that Comcast paid for the gym equipment to be removed, so this provision was followed to some extent. For the table that was left behind, Bingham had every opportunity to provide evidence of the costs associated with its removal but did not. In short, the lease provision describing the condition of the premises upon surrender is not rendered meaningless if its breach does not result in a holdover tenancy.

Bingham also argues that even under the Black's Law Dictionary definition of holdover tenancy, Comcast is a holdover tenant. Bingham homes in on the word "possession" in that definition and claims that section 6 of the lease "defines possession for purposes of determining a holdover." (ECF No. 24, PageID.540–541.)

The plain language of section 6 does not support Bingham's position. Nothing in the section refers to possession. Further, based on the Michigan case law discussed earlier, possession does not usually or clearly refer to leaving relatively few items on the premises when the tenant no longer occupies the space and has shown its intent to vacate. So for possession to be defined in the way Bingham suggests, it must be more clearly stated. The Court will not infer that possession takes on a contrary meaning when the lease agreement does not explicitly define possession in a different way. Such a reading would go against the plain and ordinary meaning given to the lease under Michigan law.

In sum, the lease agreement does not define what constitutes a holdover tenancy. So to determine whether Comcast was a holdover tenant, the Court looked to the legal definition of holdover tenancy and how Michigan courts have defined the term. None of these definitions suggest that holdover tenancy is established where a tenant leaves a relatively small amount of personal property on a large premises after the lease ends. So Comcast is not a holdover tenant based on the plain and ordinary meaning of that term. And Bingham has not provided evidence of (or even argued for) any other damages it has incurred as a result of Comcast's personal property remaining in the space. So Comcast is granted summary judgment.

## IV.

For the foregoing reasons, Comcast's motion for summary judgment (ECF No. 23) is GRANTED and Bingham's motion for summary judgment (ECF No. 22) is DENIED. A separate judgment will follow.

SO ORDERED.

Dated: May 19, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
